[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Tinch*, Slip Opinion No. 2020-Ohio-2991.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-2991

DISCIPLINARY COUNSEL *v*. TINCH.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Tinch*, Slip Opinion No. 2020-Ohio-2991.]

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct, including failing to deposit into a client trust account fees and expenses that have been paid in advance—Indefinite suspension.*

(No. 2018-1178—Submitted February 12, 2020—Decided May 20, 2020.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2018-033.

_____

**Per Curiam.**

{¶ 1} Respondent, William Matthew Tinch, of Middletown, Ohio, Attorney Registration No. 0088418, was admitted to the practice of law in Ohio in 2011.  On September 20, 2017, we suspended his license on an interim basis upon receipt of substantial, credible evidence that Tinch had violated the Rules of Professional Conduct and posed a substantial threat of serious harm to the public.

*See Disciplinary Counsel v. Tinch*, 151 Ohio St.3d 1213, 2017-Ohio-7683, 85 N.E.3d 746; Gov.Bar R. V(19)(A) and (B).

{¶ 2} In a 14-count complaint filed on June 6, 2018, relator, disciplinary counsel, charged Tinch with 71 rule violations arising from two instances of criminal conduct and his representation in 12 client matters. Because Tinch did not answer the complaint or respond to our show-cause order, we imposed an interim default suspension under Gov.Bar R. V(14)(B)(1) on September 20, 2018. *Disciplinary Counsel v. Tinch*, 153 Ohio St.3d 1243, 2018-Ohio-3776, 109 N.E.3d 1253.

{¶ 3} After Tinch responded to an order to show cause why his interim default suspension should not be converted into an indefinite suspension, we remanded the matter to the Board of Professional Conduct for consideration of mitigating evidence only. 155 Ohio St.3d 1459, 2019-Ohio-1759, 122 N.E.3d 218.

{¶ 4} Tinch is deemed to have committed the charged ethical violations by virtue of his default and failure to timely move this court for leave to answer the charges against him. *See* Gov.Bar R. V(14)(A) and (C). At a hearing before a three-member panel of the board, the parties submitted stipulated aggravating and mitigating factors and Tinch testified. The board recommends that he be indefinitely suspended from the practice of law, that he receive no credit for the time served under his interim suspensions, and that he be required to satisfy certain conditions before being reinstated to the practice of law. No objections have been filed.

{¶ 5} We adopt the board's findings of fact and misconduct and indefinitely suspend Tinch from the practice of law with no credit for the time he has served under his interim suspensions and with conditions on his reinstatement.

**Misconduct**

{¶ 6} From 2015 through 2017, Tinch engaged in a pattern of misconduct in his representation in 12 client matters. He failed to deposit unearned legal fees into his client trust account, misappropriated funds that he had deposited into his client trust account, failed to notify one client of a diversion-program meeting that required the client's attendance, and failed to diligently pursue his clients' legal objectives. He also falsely told one client's father that he had taken action when in fact he had not, and he failed to abide by another client's wishes by filing a divorce complaint instead of seeking a dissolution. In addition, he missed client meetings and court appearances and failed to respond to his clients' numerous efforts to communicate with him about the status of their legal matters, their requests for refunds, and the return of their files.

{¶ 7} In May 2017, Tinch's behavior became increasingly erratic. During one client meeting, and in the presence of the client's minor children, Tinch offered his client Xanax, a prescription drug used to treat anxiety and depression. A few weeks later, knowing that another client had been prescribed medication following a recent car accident, he asked the client to provide him with ten Percocet or Vicodin pills; the client responded that he was low on his medication. A day or two later, shortly before or after a hearing with the client, Tinch asked whether the client had filled his prescription; the client responded that he did not have any pills with him.

{¶ 8} On May 8, Tinch called the Warren County Domestic Relations Court to request a continuance of a hearing scheduled for that afternoon, but the matter was not continued. The magistrate adjourned the hearing shortly after it began and asked the judge to speak with Tinch. After observing Tinch in chambers, the judge was so concerned about Tinch's well-being that he would not permit him to leave the courthouse until he secured a ride home or submitted to a urine test. Sheriff's deputies escorted Tinch to the probation office, where he was

"out-of-control, yelling obscenities, and creating a scene." When a deputy attempted to obtain a urine sample from Tinch, Tinch slapped the empty specimen cup from the deputy's hand. Deputies then handcuffed him and escorted him back to the courtroom, still yelling obscenities. After Tinch secured a ride home, he posted disparaging and derogatory comments about the court on his personal and law-firm Facebook pages.

{¶ 9} In June 2017, Tinch was indicted on a fifth-degree felony count of forgery and two first-degree misdemeanor counts of petty theft for accepting a $10,500 personal-injury settlement check on behalf of his employer, Kirby, Thomas & Brandenburg, writing "Pay to the Order of William Matthew Tinch" on the back of the check, forging the firm's endorsement, and misappropriating the firm's $312.50 share of the fee. In October 2017, he pleaded guilty to forgery and one count of petty theft; however, the court granted his motion for intervention in lieu of conviction and held the charges in abeyance pending his completion of a substance-abuse treatment program. After he successfully completed the program, the court terminated his community control on October 15, 2018.

{¶ 10} Finally, in July 2017, Tinch was charged with second-degree felony burglary after he broke into his mother-in-law's home and left her a message on her computer. In September 2017, he pleaded guilty to a first-degree misdemeanor count of attempted trespass, and he was sentenced to 180 days in jail, with 169 days suspended and 11 days of jail-time credit. The court also imposed $350 in fines and ordered Tinch to participate in the court's intensive drug program for five years.

{¶ 11} Tinch is deemed to have committed the following ethical infractions:

- 11 violations of Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client),

- ten violations of Prof.Cond.R. 1.4(a)(3) (requiring a lawyer to keep a client reasonably informed about the status of a matter),

- one violation of Prof.Cond.R. 1.15(a) (requiring a lawyer to hold the property of clients or third persons that is in the lawyer's possession in connection with a representation separate from the lawyer's own property),

- 12 violations of Prof.Cond.R. 1.15(c) (requiring a lawyer to deposit into a client trust account fees and expenses that have been paid in advance),

- two violations of Prof.Cond.R. 1.16(d) (requiring a lawyer withdrawing from representation to take steps reasonably practicable to protect a client's interest),

- 11 violations of Prof.Cond.R. 1.16(e) (requiring a lawyer to promptly refund any unearned fee upon the lawyer's withdrawal from employment),

- one violation of Prof.Cond.R. 8.4(b) (prohibiting a lawyer from committing an illegal act that reflects adversely on the lawyer's honesty or trustworthiness),

- ten violations of Prof.Cond.R. 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation),

- nine violations of Prof.Cond.R. 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice), and

- four violations of Prof.Cond.R. 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law).

### Sanction

{¶ 12} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the

aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 13} As aggravating factors, the parties stipulated that Tinch had acted with a dishonest or selfish motive, engaged in a pattern of misconduct, committed multiple offenses, failed to cooperate in the disciplinary process, and harmed multiple vulnerable clients. *See* Gov.Bar R. V(13)(B)(2) through (5) and (8). The board noted that Tinch's failure to cooperate had continued for two years and had extended beyond the date of his disciplinary hearing in that he was late in complying with the panel's order to file supplemental materials.

{¶ 14} At his disciplinary hearing, Tinch testified that he accepted full responsibility for his wrongdoing, but the board found that his testimony was replete with excuses and justifications for his misconduct. He emphasized his firm's poor management, lack of support, and overhead requirements. He also claimed that the firm's failure to inform his clients that he had entered inpatient substance-abuse treatment contributed to their grievances—yet he admitted that his substance abuse started before he joined the firm and that it (along with his client-related misconduct) continued after he left. Tinch lamented that Ohio's domestic-relations laws and his lack of connections or a mentor in the profession adversely affected his prospects for success. He also attributed his chemical dependency to being "heavily overprescribed" narcotics for arthritis and back pain. And while Tinch spoke about the effect his conduct had had on his family, he expressed no remorse for the harm his misconduct had caused to many clients. Therefore, the board attributed aggravating effect to Tinch's failure to demonstrate true ownership of and appropriate remorse for his misconduct.

{¶ 15} As for mitigation, the parties stipulated that Tinch has no prior discipline and had made full and free disclosure to the board, presented positive character evidence, had other penalties or sanctions imposed for his criminal conduct, and established the existence of a chemical-dependency disorder that

contributed to his conduct. *See* Gov.Bar R. V(13)(C)(1) and (4) through (7). At the time of his disciplinary hearing, Tinch had completed a 28-day inpatient, residential drug-treatment program and a 52-week aftercare program. He continued to participate in a substance-abuse recovery program through his church, and on September 24, 2019, he entered into a three-year contract with the Ohio Lawyers Assistance Program ("OLAP"). He has been sober since his arrest in July 2017. In September 2019, John Widmer, a licensed chemical-dependency counselor, opined that Tinch could return to the ethical and competent practice of law provided that he comply with all OLAP recommendations.

{¶ 16} The board also found that Tinch has paid $14,153.50 in restitution to the affected clients and his former firm (which had refunded some retainers on his behalf and performed some of the work for which Tinch was paid) and has agreed to make restitution of $1,000 to Melinda Vandegrift.

{¶ 17} The board acknowledged that disbarment is the presumptive sanction for the misappropriation of client funds. *See, e.g.*, *Disciplinary Counsel v. Longino*, 128 Ohio St.3d 426, 2011-Ohio-1524, 945 N.E.2d 1040, ¶ 39; *Cincinnati Bar Assn. v. Weaver*, 102 Ohio St.3d 264, 2004-Ohio-2683, 809 N.E.2d 1113, ¶ 16 ("Taking retainers and failing to carry out contracts of employment is tantamount to theft of the fee from the client. The presumptive disciplinary measure for such acts of misappropriation is disbarment"). But recognizing that we often temper this presumptive sanction when an attorney's misconduct was motivated by addiction and the attorney has demonstrated a commitment to recovery, the board recommends that we indefinitely suspend Tinch from the practice of law with no credit for the time he has served under his interim remedial and interim default suspensions. In support of that recommendation, the board primarily relies on three cases in which we imposed indefinite suspensions, with no credit for time served, on attorneys who had engaged in similar misconduct while abusing drugs and/or alcohol. *See*

*Disciplinary Counsel v. Deters*, 155 Ohio St.3d 478, 2018-Ohio-5025, 122 N.E.3d 159; *Cleveland Metro. Bar Assn. v. Lemieux*, 139 Ohio St.3d 320, 2014-Ohio-2127, 11 N.E.3d 1557; *Cincinnati Bar Assn. v. Lawson*, 119 Ohio St.3d 58, 2008-Ohio-3340, 891 N.E.2d 749.

{¶ 18} In addition to the indefinite suspension, the board recommends that Tinch be ordered to submit proof that he has made restitution of $1,000 to Vandegrift and that his future reinstatement be conditioned on the submission of evidence that he has maintained his sobriety, has complied with his OLAP contract, and is capable of resuming the competent, ethical, and professional practice of law.

{¶ 19} Having independently reviewed the record and our precedent, we agree that an indefinite suspension, with no credit for time served and with the additional conditions recommended by the board, is the appropriate sanction in this case.

{¶ 20} Accordingly, William Matthew Tinch is indefinitely suspended from the practice of law in Ohio with no credit for the time he has served under the interim remedial suspension imposed on September 20, 2017, or the interim default suspension imposed on September 20, 2018. Within 60 days, he shall submit proof to relator that he has made restitution of $1,000 to Melinda Vandegrift. In addition to the conditions for reinstatement set forth in Gov.Bar R. V(25), Tinch shall be required to submit proof (1) that he has maintained his sobriety throughout his suspension, (2) that he has complied with the terms of his OLAP contract, and (3) that a qualified healthcare professional or chemical-dependency counselor has opined that he is capable of returning to the competent, ethical, and professional practice of law. Costs are taxed to Tinch.

Judgment accordingly.

O'CONNOR, C.J., and KENNEDY, FRENCH, FISCHER, DEWINE, DONNELLY, and STEWART, JJ., concur.

_____

Joseph M. Caligiuri, Disciplinary Counsel, for relator.

William Matthew Tinch, pro se.

_____